IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL FIELDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.   14-cv-1096-MJR-SCW |
| | ) |
| RICHARD RANSOM | ) |
| and ERIC QUANDT, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

### I.   INTRODUCTION

In October 2014, while confined at Menard Correctional Center, Michael Fields (Plaintiff) filed a pro se civil rights complaint in this Court under 42 U.S.C. 1983, naming two Defendants – Richard Ransom and "C/O Quant." Plaintiff alleged that Defendants violated his federally-secured constitutional rights.

On threshold review, the undersigned dismissed certain claims but found that the complaint stated a cognizable claim for retaliation (in violation of the First Amendment) against both Defendants. "C/O Quant" initially was believed to be Shane Quant, but later information clarified that the correct individual was Eric Quant (*see* Doc. 35). Defendants answered, a discovery schedule was entered, and the case proceeded. Now before the Court is Defendants' motion for summary judgment and supporting memorandum (Docs. 56-57), to which Plaintiff filed a brief in opposition (Doc. 59). For the reasons delineated below, the Court grants Defendants' motion.

**II.  SUMMARY OF ALLEGATIONS AND EVIDENCE**

As narrowed by the Court's threshold review Order, Plaintiff alleges that Quandt and Ransom (Defendants) retaliated against him for filing a grievance against Quandt on December 3, 2012. The act of retaliation was confiscation of Plaintiff's eyeglasses in a cell search in June 2013 (Doc. 8, p. 2). The key facts and allegations, drawn from the record properly before the Court (including exhibits, sworn declarations, and the transcript of Plaintiff's May 2016 deposition) are summarized as follows.

On June 7, 2013, Richard Ransom, a correctional officer at Menard Correctional Center, conducted a shakedown of Plaintiff's cell in the West Cell House of Menard (Doc. 57-2, p. 2). Plaintiff believes the shakedown occurred on June 9, 2013, but an exhibit from the search (the Illinois Department of Corrections Shakedown Record, referred to as a "shakedown slip") indicates that the search occurred on June 7, 2013 (Doc. 57-3, p. 1; Doc. 59, p. 17; Doc. 1, p. 18; 57-3, p. 23-24).

In the cell, Ransom located three pairs of eyeglasses with pointed metal ends on the earpieces; he confiscated them (Doc. 57-3, p. 1; 57-2, p. 2). Two of the pairs belonged to Plaintiff; the third belonged to his cellmate, Anthony McGruder (Doc. 57-1, p. 24-25). Ransom attests in a sworn declaration that he confiscated the eyeglasses at the instruction of his supervisors, a directive issued after it was learned that inmates in the West Cell House, where Plaintiff's cell was located, were using the metal earpieces for weapons (Doc. 57-2, p. 1-2). Plaintiff testified that one of the eyeglasses was rubber and not metal (Doc. 57-1, p. 25).

Correctional officer Eric Quandt witnessed the shakedown, according to the shakedown slip (Doc. 57-2, p. 2; 57-3, p. 1). Plaintiff points out that Eric Quandt actually was assigned to "the tower" (not the West Cell House) on June 9, 2013 (the day Plaintiff believes the shakedown took place). But he acknowledges that the tower was closed that day, and Quandt may have been on a floating rotation and thus in Plaintiff's cellhouse during the shakedown (Doc. 57-1, p. 19; Doc. 59, p. 19). Regardless of the date the shakedown occurred, both sides admit that Quandt was present during the shakedown, and the Court assumes Quandt's presence during the cell search for purposes of the summary judgment motion.

Plaintiff alleged in his *complaint* that his glasses were taken in retaliation for his filing a grievance against Quandt in December 2012. Plaintiff testified in his *deposition* that Ransom (a month or two *after* the shakedown, when confronted by Plaintiff about why Ransom took the eyeglasses) said to Plaintiff "You complain too much" (Doc. 57-1, p. 20, 36-37).

Plaintiff also testified that he wrote a grievance against Quandt on December 3, 2012, based on the fact Quandt would not let him use the restroom while he was in the healthcare unit (Doc. 57-1, p. 38). Plaintiff admitted that he had not talked to Quandt about the grievance or shown the grievance to him (*Id.* at p. 39). In response to that grievance, Plaintiff's counselor contacted the healthcare unit and determined that the restrooms were for staff only (Doc. 1, p. 23). Plaintiff testified that (a) the timeline of events led him to believe the confiscation of his eyeglasses was an act of retaliation for

him filing a grievance against Quandt six months earlier, (b) Plaintiff presumed that Ransom was referring to the grievance when Ransom one day commented that Plaintiff complained too much (Doc. 57-1, p. 43). When pressed (in his deposition) as to his belief that Quandt took the glasses *because of* the December 2012 grievance, Plaintiff testified simply: "I'm saying it's possible" (*Id.*, p. 44).

Plaintiff also suggested he could have been retaliated against because he had two lawsuits pending against high ranking officers at Menard, one of which he says was filed just three or four weeks before his glasses were taken (Doc. 59, p. 7). Plaintiff identified one of those cases as *Fields v. Restoff*, Case No. 13-cv-0145-JPG-DGW filed on February 11, 2013 (Doc. 59, p. 7 n. 5). He identified the other case as *Fields v. Dettrott*, Case No. 12-cv-0420. There is no case listed in this District by that name, and that number was a case against petroleum refineries for municipal ordinance violations.

Additionally, Plaintiff asserts that he did not receive any notice that the eyeglasses were declared prohibited. Plaintiff claims that when items previously were deemed contraband, the inmates would receive notices of future confiscations. Plaintiff points to two notices he received regarding confiscation of items that the prison changed to contraband, typewriters and hard plastic hairbrushes (Doc. 59-2, p. 7-8). Plaintiff says he did not get a notice about metal eyeglasses being declared contraband. Plaintiff also provides affidavits from five inmates testifying that they have plastic eyeglasses with malleable metal substance in the earpieces, and they never had their glasses confiscated (Doc. 59-2, p. 10-13; Doc. 59-3, p. 1-6).

## III. APPLICABLE LEGAL STANDARDS

### A. <u>Summary Judgment Motions</u>

Summary judgment is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. *Dynegy Mktg. & Trade v. Multi Corp.*, **648 F.3d 506, 517 (7th Cir. 2011)**, *citing* **FED. R. CIV. P. 56(a).**

The party seeking summary judgment bears the initial burden of showing -- based on the pleadings, affidavits, and/or information obtained via discovery -- the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986).** After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 250 (1986)**, *quoting* **FED R. CIV. P. 56(e)(2).** A fact is material if it is outcome determinative under applicable law. *Anderson*, **477 U.S. at 248;** *Ballance v. City of Springfield, Ill. Police Dep't*, **424 F.3d 614, 616 (7th Cir. 2005);** *Hottenroth v. Village of Slinger*, **388 F.3d 1015, 1027 (7th Cir. 2004).**

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, **477 U.S. at 248.** "A mere scintilla of evidence in support of the nonmoving party's position is not sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Harris N.A. v. Hershey*, **711 F.3d 794, 798 (7th Cir. 2013).**

On summary judgment, the district court construes the facts and draws the

reasonable inferences in favor of the non-moving party – here, Plaintiff Fields. *Cole v. Board of Trustees of Northern Illinois University*, **838 F.3d 888, 895 (7th Cir. 2016)**. However, the court does not draw every *conceivable* inference from the record, "and mere speculation or conjecture will not defeat a summary judgment motion." *Rockwell Automation, Inc. v. National Union Fire Ins. Co.*, **544 F.3d 752, 757 (7th Cir. 2008) (emphasis added),** *quoting McCoy v. Harrison,* **341 F.3d 600, 604 (7th Cir. 2003).**

### B. Retaliation

An official who retaliates against a prisoner because that prisoner filed a grievance violates the prisoner's First Amendment rights. *DeWalt v. Carter*, **224 F.3d 607, 618 (7th Cir. 2000).** Establishing a claim of retaliation requires a prisoner to show the following: (1) he engaged in a protected activity, (2) he suffered a deprivation likely to prevent future protected activities, and (3) there was a causal connection between the two. *See Watkins v. Kasper*, **599 F.3d 791, 794 (7th Cir. 2010);** *Bridges v. Gilbert*, **557 F.3d 541, 546 (7th Cir. 2009).**

If the plaintiff prisoner makes this prima facie showing, the burden shifts to the defendant, who can still prevail if he shows that the offending action would have happened even if there had been no retaliatory motive, i.e., if "the harm would have occurred anyway." *Hawkins v. Mitchell,* **756 F.3d 983, 996 n.10 (7th Cir. 2014),** *quoting Thayer v. Chiczewski,* **705 F.3d 237, 251-52 (7th Cir. 2012), and** *Greene v. Doruff*, **660 F.3d 975, 977 (7th Cir. 2011).** *See also Mays v. Springborn*, **719 F.3d 631, 634-35 (7th Cir. 2013).**

IV.     ANALYSIS

   A.     <u>Eric Quandt</u>

Defendant Quandt argues that he is entitled to summary judgment, because there is no evidence (only Plaintiff's speculation and belief) that Quandt retaliated against Plaintiff in confiscating his eyeglasses. As an initial matter, the Court notes some question as to whether Quandt participated in the shakedown of Plaintiff's cell. Plaintiff testified in his deposition that he identified Quandt as one of the officers who conducted the shakedown based on the ID number on the shakedown slip (Doc. 57-1, p. 31). However, Plaintiff also asserted (in response to the summary judgment motion) that Quandt was scheduled for tower duty the day that Plaintiff thinks the shakedown took place -- June 9, 2013. The shakedown slip (Doc. 57-3 is a slightly smudged copy) appears to state that the shakedown took place on June 7, not June 9, 2013. For purposes of this motion, the Court assumes that Eric Quandt participated in the shakedown, as Plaintiff admits Quandt's ID number is on the shakedown slip, and Ransom agrees that the shakedown slip lists Quandt as a witness.

Plaintiff argues that Quandt's action in confiscating the eyeglasses constituted retaliation for Plaintiff writing a grievance against Quandt six months earlier. Plaintiff wrote a grievance on December 3, 2012 against Quandt for refusing to allow Plaintiff to use the restroom in the healthcare unit (Doc. 1, p. 23). More accurately, Plaintiff testified that "It's possible" Quandt acted in retaliation, because the grievance was lodged six months prior to the cell search. In other words, Plaintiff relies on the

chronology of events to support his allegation of retaliation by Quandt. While suspicious timing can support a retaliation claim (i.e., it can be considered circumstantial evidence of retaliation), suspicious timing alone is not enough. *Kidwell v. Eisenhauer,* **679 F.3d 957, 966 (7th Cir.),** *cert. denied,* **-- U.S. --, 133 S. Ct. 489 (2012);** *Zimmerman v. Tribble,* **226 F.3d 568, 573 (7th Cir. 2000);** *Andonissamy v. Hewlett-Packard Co.,* **547 F.3d 841, 851 (7th Cir. 2008).**

In the context of both Title VII and Section 1983 retaliation cases, the Seventh Circuit has explained that it is well established that mere temporal proximity between a protected activity and the action alleged to have been taken in retaliation for that activity will rarely be sufficient in and of itself to create a triable issue. *See, e.g., Kidwell,* **679 F.3d at 966 ("suspicious timing may be just that – suspicious – and a suspicion is not enough to get past a motion for summary judgment").** Speculation based on suspicious timing alone does not support a reasonable inference of retaliation; instead, a plaintiff must produce facts which somehow tie the allegedly retaliatory action to the plaintiff's protected activity. *Ripberger v. Corizon, Inc.,* **773 F.3d 871, 883 (7th Cir. 2014),** citing *Stone v. City of Indianapolis Pub. Utils. Div.,* **281 F.3d 640, 644 (7th Cir. 2002), and** *Sauzek v. Exxon Coal USA, Inc.,* **202 F.3d 913, 918 (7th Cir. 2000).**

Plaintiff's glasses were taken six months after he wrote his grievance, a relatively long time to be considered suspicious timing. *See, e.g., Young-Gibson v. Board of Educ.,* **558 Fed. App'x 694, 700 (7th Cir. 2014) (collecting cases in which 7-month, 6-month, and even 7-week time gap not proximate enough to be suspicious).** Even if the timing of

the shakedown and confiscation is suspicious here, Plaintiff has failed to offer any other evidence other than his own speculation to support his claim. Plaintiff testified that it was "possible" that Quandt was acting in retaliation giving the timing, but Plaintiff offers no further evidence to show retaliation on Quandt's part. Plaintiff's speculation, standing alone, is not enough at this stage to create a triable issue. *Rockwell*, **544 F.3d at 757 ("mere speculation or conjecture will not defeat a summary judgment motion");** *Devbrow v. Gallegos*, **735 F.3d 584, 588 (7th Cir. 2013) (inmate's verified complaint alleged retaliation, but his speculation regarding the officers' retaliatory motive was not sufficient, alone, to create a genuine issue of material fact).**

Plaintiff admitted that he never talked to Quandt about the grievance or the confiscation of his eyeglasses. And no evidence has been presented that Quandt was even *aware of* Plaintiff's grievance at the time the glasses were taken from the cell. The grievance against Quandt, attached to Plaintiff's complaint, only indicates that the counselor discussed the bathroom situation with the healthcare unit. There is no suggestion that the counselor spoke with Quandt or that he was otherwise notified of the grievance. There is no evidence before this Court other than the timing of Quandt's actions to support Plaintiff's retaliation claim against Quandt. The Court concludes that Quandt is entitled to summary judgment on Plaintiff's claim against him.

### B. Richard Ransom

Richard Ransom also moves for summary judgment on Plaintiff's retaliation claim. The Court finds no evidence of retaliation by Ransom. Plaintiff argues that

Ransom confiscated the eyeglasses in retaliation for Plaintiff filing lawsuits and a grievance. As with Quandt, there is no evidence that Ransom was aware of either the grievance filed against Quandt or the lawsuits Plaintiff filed before the shakedown.

In his memo opposing summary judgment, which consists of 84 pages of brief plus exhibits, Plaintiff emphasizes that he filed lawsuits against "high ranking officials" at Menard about three weeks prior to the confiscation (Doc. 59, p. 7). But there is no evidence that Ransom was a party to any of the lawsuits or that he even knew of the lawsuits. The one lawsuit identified by Plaintiff of which a record exists in this Court names a single defendant, Sergeant John Restoff, and was filed roughly four months prior to the confiscation of Plaintiff's eyeglasses. The undersigned located another lawsuit in the electronic database, Case No. 12-cv-1170-DGW, which was filed even earlier and did not include Ransom as a defendant.

In support of his retaliation claim, Plaintiff points to a statement by Ransom (one or two months after the cell search) when Plaintiff asked about his glasses being confiscated, and Ransom responded: "You complain too much." However, this vague statement is not tied to any specific protected conduct that Plaintiff participated in. There is no evidence that Ransom was referring to Plaintiff's lawsuits or any other grievances he might have filed. Ransom could have been referring to general complaints about everyday life by Plaintiff. Ransom could have been characterizing Plaintiff's ongoing questions about the glasses being taken as a complaint.

Without any further evidence as to what those complaints were, the Court cannot

to find that Plaintiff's generic "complaints" (about who knows what when) amount to protected speech, such that Ransom's action in removing the eyeglasses could be deemed to be in retaliation. *Bridges,* **557 F.3d at 551;** *Ogurek v. Gabor,* **827 F.3d 567, 569 (7th Cir. 2016).** Although verbal complaints may amount to protected speech, *see Pearson v. Welborn,* **471 F.3d 732, 740-41 (7th Cir. 2006)(verbal complaints about condition of cell were designed to affect change in prison policy and thus protected),** there is no indication in the record here that the "complaints" Ransom referred to were protected speech by Plaintiff. Plaintiff has failed to sustain his prima facie showing of retaliation – i.e., there is no evidence that Ransom took the glasses in response to protected speech or activity by Plaintiff.[1] Accordingly, the Court finds that Defendant Ransom is entitled to summary judgment.

## V. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' motion for summary judgment (Doc. 56). No other claims remain. The Clerk of Court shall enter judgment in favor of Defendants, Richard Ransom and Eric Quandt, and against Plaintiff, Michael Fields.

---

[1] Having found no evidence of retaliation by Ransom, the Court need not reach the issue of whether Ransom's allegedly retaliatory action would have occurred anyway (i.e., for a non-retaliatory reason). Ransom attests that in 2013, he was instructed by superior officers to confiscate all eyeglasses containing metal from inmates, based on the security concern that offenders in the West Cell House were using metal eyeglass frames to create weapons. Plaintiff countered with some evidence that other inmates still have glasses like the ones confiscated from him and that previous changes in policy regarding contraband were accompanied by advance notice to the inmates, which did not occur prior to this confiscation. As there is no evidence that Ransom's conduct was in retaliation for any protected speech of Plaintiff's, the Court need not reach this issue.

IT IS SO ORDERED.

DATED: January 13, 2017.

                *s/ Michael J. Reagan*
                Michael J. Reagan
                United States District Judge